## WILLIAMS *v.* STATE.

(Division A.   April 13, 1931.)

[133 So. 661.   No. 29288.]

**Ely B. Mitchell,** of Corinth, for appellant.

**Eugene B. Ethridge,** Assistant Attorney-General, for the state.

**Cook, J.,** delivered the opinion of the court.

In the circuit court of Alcorn county the appellant was convicted of an unlawful and felonious attempt to kill and murder one J. W. Mincey, and was sentenced to serve a term of five years in the state penitentiary, and from this conviction and sentence he prosecuted this appeal.

According to the testimony offered by the state, certain officers of Alcorn county secured a warrant authorizing a search of the appellant's home and premises for intoxicating liquors. With this warrant in the possession

of one of these officers, a party of seven men proceeded to the appellant's home. When they were near his home, these men separated into two parties, one party of three, with the search warrant in the possession of one of them, approaching the appellant's home from the rear, while the other party, composed of four men, approached the front of the house. While the latter party was watching the front of the house, they saw the appellant drive up to, and enter, it. They followed almost immediately, and pushed the door open and entered the room where the appellant's family and other people were seated around a table upon which there was an oil lamp burning. Two of these officers entered this door together; the other two being immediately behind them. They had pistols in their hands, and flashlights, which they turned upon the appellant who was standing by the table, and, as they entered the door, they commanded him to "throw up his hands." There was testimony that one of the officers who was leading the party said to the appellant, "Consider yourself under arrest, we have a warrant to search your home." However, this statement was not heard by all of the officers who were bunched close together, and consequently the testimony of the occupants of the house that they heard no such statement is not unreasonable.

It was further testified by these officers that, when they entered the room in the manner above outlined the appellant stepped to the corner of the room and picked up a rifle and attempted to work the magazine lever which loads the rifle, and then pointed it at the officers. They commanded him to drop the rifle, and, upon his failure to do so, two of them fired at him, one of the shots striking the appellant in the arm. He then dropped the rifle and jumped through a window and fell to the ground. One of the officers followed through the window and captured the appellant after striking him with a pistol. After the rifle was dropped by the appellant, one of the officers

examined it and found that it was not loaded, but there were seven cartridges in the magazine thereof, one of which was battered at the end.

None of the officers who entered the home of the appellant had any warrant or authority so to do. The door leading into the room where the appellant and his family were was partly ajar. They pushed this door open, ran into the room with drawn pistols and flashlights, and commanded the appellant to ''hold up'' or ''put up'' his hands. Although there is testimony to the effect that the appellant knew some of these officers, there is nothing to contradict his testimony and that of his witnesses that, in the confusion incident to their entry in this unwarranted manner, he did not recognize any of them, and did not hear anything said except the command ''Hold up your hands.'' In fact, the state offered the testimony of a white man who was in the room at the time of this occurrence, and who knew the officers well, to the effect that, when they first entered the room, he did not recognize them, and that it was not until the rapidly moving events were practically over that he realized that they were officers.

Upon the whole evidence, we think the acts and conduct of the appellant evince rather a natural reaction against this unwarranted trespass upon his rights and home, and that the evidence is insufficient to warrant a conviction for a willful, felonious, and malicious attempt to kill and murder. At the conclusion of the evidence no peremptory instruction was requested; consequently no final judgment can be entered here.

The judgment of the court below will therefore be reversed, and the cause remanded.

Reversed and remanded.